



**VERMONT SUPERIOR COURT**

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



**CIVIL DIVISION**

Case No. 23-CV-00206

---

Seras Routhier et al v. Lynda Benoit et al

---

## Ruling on Landon Denise Benoit's Motions to Dismiss

Plaintiffs Sera Routhier and Jameson Landrum leased an apartment in a 4-unit building owned by Defendant Lynda Benoit. They describe themselves as white (Ms. Routhier) and black (Mr. Landrum). They allege that Ms. Benoit failed to remedy serious habitability problems with the premises and that she and members of her family later staged a campaign of harassment on the basis of race and color that continued at least until this case was filed, including terminating their lease and forcing them into homelessness. The other family members alleged to have participated in the campaign include Defendant Lanny Benoit (Lynda's husband), Defendant Landon Benoit (Lynda's son), and Defendant Denise Benoit (Lynda's daughter-in-law).[1]

Against all the Defendants, Plaintiffs assert numerous violations of Vermont's Fair Housing and Public Accommodations Act (VHPA), 9 V.S.A. §§ 4500–4507; the analogous federal Fair Housing Act (FHA), 42 U.S.C. §§ 3601–3631 (together, Counts 1–8); and intentional infliction of emotional distress (IIED, Count 13). Counts 9–11 are asserted against Lynda only; Count 12 is asserted against Lynda and Lanny only. Defendants Landon and Denise (son and daughter-in-law) have filed separate Rule

---

[1] Because Defendants all have the same surname, the Court refers to them by their first names for the sake of clarity.

12(b)(6) motions to dismiss *all* claims, including those not asserted against them. They argue that the VHPA/FHA claims should be dismissed because they are not alleged to be the owners of the leased premises or involved in leasing decisions in any manner, there are no alleged discriminatory statements for purposes of Counts 3 and 4, and that the allegations are generally insufficient to state a claim for IIED. They purport to seek dismissal of the claims not asserted against them because those claims are not asserted against them. Plaintiffs oppose the motion, at least, as it regards the claims asserted against Landon and Denise. The Court determines as follows.

## I. Procedural Standard

The Vermont Supreme Court has described the familiar standard for Rule 12(b)(6) motions to dismiss for failure to state a claim as follows:

> "A motion to dismiss . . . is not favored and rarely granted." This is especially true "when the asserted theory of liability is novel or extreme," as such cases "should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." In reviewing a motion to dismiss, we consider whether, taking all of the nonmoving party's factual allegations as true, "'it appears beyond doubt' that there exist no facts or circumstances that would entitle the plaintiff to relief." We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false.

*Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 316–17 (citations omitted).

## II. Background

The amended complaint is not a model of clarity. It consists of 87 paragraphs of factual allegations that mark moments in time along a narrative beginning in 2018, when Plaintiffs leased the apartment, to 2023, when the complaint in this case was filed. Eight counts of state and federal housing discrimination follow, but they are asserted in

a completely conclusory manner, to some extent leaving the reader to guess at their nature and which of the foregoing 87 paragraphs of allegations may have been intended to support each. The IIED claim is similarly conclusory.

Briefly, the basic narrative alleged is as follows. Plaintiffs leased the apartment from Lynda in 2018. They complained about serious habitability problems, and she took no corrective action. They complained to city officials, who documented myriad code violations, and still she took no corrective action.

Landon and Denise moved into one of the apartments in the same building in 2020. Landon and Lanny arrived one day and saw a Black Lives Matter lawn sign that Ms. Routhier had just placed in front of Plaintiffs' apartment. Lanny became enraged, started screaming at Ms. Routhier, and attempted to remove or destroy the sign. During the encounter, he made statements in opposition to his apparent understanding of the message the lawn sign was intended to convey, including protests of: "All Lives Matter," "White Lives Matter," "My life matters too," and "This is liberal garbage." Ms. Routhier engaged in a physical struggle with Lanny and was able to wrest the sign from him, but it was damaged. Up to this point, Lynda is alleged to have entirely ignored habitability violations, but no active harassment is asserted. After this encounter, however, everything went downhill.

Ms. Routhier told Lynda that she planned to "press charges" over the incident. Lynda responded by demanding that Plaintiffs vacate the apartment. She later delivered formal notice to terminate the tenancy for no cause. Ms. Routhier installed a security camera. Landon and Denise started loitering in front of it and staring into it. Landon threw dog feces on Plaintiffs' front porch and would take his dog to urinate there.

Landon and Denise's vehicles (presumably driven by them) did "burnouts" in the driveway in front of Plaintiffs' apartment, apparently to intimidate them.

Eventually, Plaintiffs moved out of the apartment. But their efforts at renting a new apartment were foiled for a protracted time because Lynda would disparage them to prospective landlords. They ended up in a homeless shelter. Landon and Denise would drive by the homeless shelter directing intimidating looks towards them. Denise once encountered Ms. Routhier, both in cars, at Spaulding High School. Denise honked her horn and accelerated towards Ms. Routhier. Whenever Lanny, Landon, or Denise saw either of Plaintiffs, they would shout obscenities and, if driving, would swerve at Plaintiffs threateningly.

There is a general allegation that Landon and Denise would act as Lynda's agent for landlord business when Lynda could not be there. The Court perceives no allegation that anything Landon or Denise is alleged to have done in furtherance of the campaign of harassment was undertaken while they were acting in that agency capacity.

III.   Analysis

Landon's and Denise's motions to dismiss are as conclusory as Plaintiffs' descriptions of their legal claims in the amended complaint. As to the housing discrimination claims, they summarily assert that because they did not own the rental property or make any leasing decisions, they cannot be liable. They do not attempt to describe, however, what specifically the legal claims are, what their elements may be, and why not being the owner or decisionmaker as to leasing decisions means that they cannot be liable. They argue that they are not alleged to have made any statements indicating any discriminatory intent for purposes of Counts 3 and 4. As for the IIED

claims, they simply argue that nothing in the complaint can possibly rise to the level necessary to support such claims.

A.    Counts 1 and 2

In Counts 1 and 2, Plaintiffs assert violations of 9 V.S.A. § 4503(a)(1) and 42 U.S.C. § 3604(a).  Section 4503(a)(1) provides:

(a) It shall be unlawful for any person:

(1) To refuse to sell or rent, or refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling or other real estate to any person because of the race, sex, sexual orientation, gender identity, age, marital status, religious creed, color, national origin, or disability of a person, or because a person intends to occupy a dwelling with one or more minor children, or because a person is a recipient of public assistance, or because a person is a victim of abuse, sexual assault, or stalking.

By its terms, this provision can apply to "any person."  While much of it might only reasonably apply to one in a position to, for example, lease out the apartment, the "or otherwise make unavailable or deny" provision is at least arguably broader.  *See Vermont Human Rights Commission v. Polak*, No. 21-CV-2095, 2022 WL 1242683 (Vt. Super. Ct. Feb. 2, 2022) (explaining that 9 V.S.A. § 4503(a)(1) at least arguably could extend to circumstances in which a neighbor's conduct has a discriminatory effect on one's housing).  Other interpretations are also possible.

The Court need not rule at this time that the allegations asserted against Landon and Denise satisfy § 4503(a)(1) despite not being owners or involved in leasing decisions. It is enough to observe that this provision might be determined to apply in these circumstances.  *See Ass'n of Haystack Prop. Owners, Inc. v. Sprague,* 145 Vt. 443, 447 (1985) ("Moreover, courts should be especially reluctant to dismiss on the basis of pleadings when the asserted theory of liability is novel or extreme.").  Further,

consideration of the need for interpretation of and how to interpret this provision are better made on a more complete factual record. The motions to dismiss are denied as to Count 1 (the state claim) and, because the parties do not distinguish between the state and federal claims for dismissal purposes, Count 2 (the federal claim) as well.

B. Counts 3 and 4

In Counts 3 and 4, Plaintiffs assert violations of 9 V.S.A. § 4503(a)(3) and 42 U.S.C. § 3604(c). Section 4503(a)(3) provides:

(a) It shall be unlawful for any person:

.  .  .

(3) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling or other real estate that indicates any preference, limitation, or discrimination based on race, sex, sexual orientation, gender identity, age, marital status, religious creed, color, national origin, or disability of a person, or because a person intends to occupy a dwelling with one or more minor children, or because a person is a recipient of public assistance, or because a person is a victim of abuse, sexual assault, or stalking.

Defendants' argument that this provision applies only to the owner of the leased premises or one directly involved in leasing decision is not accurate. By its terms, it could apply to "any person," not just landlords.

They also argue, however, that the Plaintiffs have alleged no discriminatory statements "with respect to the sale or rental" of housing in violation of this provision. In briefing, Plaintiffs have also pointed to no such alleged statement. Instead, they argue that the mere fact that Landon and Denise are alleged to have harassed Plaintiffs in a discriminatory manner is sufficient for purposes of 9 V.S.A. § 4503(a)(3). In other words, they suggest that any act of discrimination operates as a statement indicating an intent to discriminate in violation of this provision.

Plaintiffs' argument is substantially overbroad. Case law under the analogous federal provision, 42 U.S.C. § 3604(c), makes unassailably clear that the "notice, statement, or advertisement" that must be made, printed, or published is some sort of actual notice, statement, or advertisement—the plain meaning prevails. *See, e.g., Soules v. U.S. Dep't of Hous. & Urb. Dev.*, 967 F.2d 817, 824 (2d Cir. 1992) (test is whether "ordinary reader [or listener]" would interpret "ad or statement" as indicating discriminatory preference); *United States v. Hunter*, 459 F.2d 205, 210 (4th Cir. 1972) (applying plain meaning of statute to publication by newspaper); *Hous. Rts. Ctr. v. Donald Sterling Corp.*, 274 F. Supp. 2d 1129, 1137 (C.D. Cal.), *aff'd sub nom. Hous. Rts. Ctr. v. Sterling*, 84 F. App'x 801 (9th Cir. 2003) ("The governing regulations interpret this provision to cover 'all written or oral notices or statements by a person engaged in the sale or rental of a dwelling.'"). Neither party argues that the Vermont provision, which is virtually identical, should be interpreted any differently.

The amended complaint includes no allegation that either Landon or Denise made any statement indicating a discriminatory preference regarding housing. Accordingly, Counts 3 (the state claim) and 4 (the federal claim) are dismissed.

C.    Counts 5 and 6

In Counts 5 and 6, Plaintiffs assert violations of 9 V.S.A. § 4506(e) and 42 U.S.C. § 3617. The Vermont provision is as follows:

(e) A person shall not coerce, threaten, interfere, or otherwise discriminate against any individual who:

(1) has opposed any act or practice that is prohibited under section 4502 or 4503 of this title;
(2) has lodged a complaint or has testified, assisted, or participated in any manner with the Human Rights Commission in an investigation of acts or practices prohibited by this chapter;

(3) is known by the person to be about to lodge a complaint, testify, assist, or participate in any manner in an investigation of acts or practices prohibited by this chapter;
(4) is exercising or enjoying a right granted or protected by this chapter; or
(5) is believed by the person to have acted as described in subdivisions (1) through (4) of this subsection.

9 V.S.A. § 4506(e). The corresponding federal provision is more succinct:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

Neither provision applies exclusively to the owners of rental property or those directly involved in leasing decisions. *See, e.g., Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 783 (D. Md. 2010), *on reconsideration in part*, No. CIV.A. AW-05-2982, 2010 WL 2858252 (D. Md. July 19, 2010), *and aff'd in part sub nom. Antonio v. SSA Sec., Inc.*, 782 F.3d 173 (4th Cir. 2015) ("[N]on-landlords are liable under the FHA [including § 3617] and such entities that 'make housing unavailable,' through such activities as intimidation, have been found to violate the FHA."); *Human Rights Commission v. Polak*, No. 21-CV-2095, 2022 WL 1242683 (Vt. Super. Ct. Feb. 2, 2022) (neighbor's alleged conduct falls within 9 V.S.A. § 4506(e)(4).

Accordingly, the motions to dismiss are denied as to Counts 5 (the state claim) and 6 (the federal claim).

D.      Counts 7 and 8

In Counts 7 and 8, Plaintiffs assert violations of 9 V.S.A. § 4503(a)(2) and 42 U.S.C. § 3604(b). The Vermont provision is as follows:

(a) It shall be unlawful for any person:

. . .

(2) To discriminate against, or to harass, any person in the terms, conditions, privileges, and protections of the sale or rental of a dwelling or other real estate, or in the provision of services or facilities in connection with a dwelling or other real estate, because of the race, sex, sexual orientation, gender identity, age, marital status, religious creed, color, national origin, or disability of a person, or because a person intends to occupy a dwelling with one or more minor children, or because a person is a recipient of public assistance, or because a person is a victim of abuse, sexual assault, or stalking.

Similar to Counts 1 and 2, by its terms, this provision can apply to "any person." While much of the law might only reasonably apply to a person in a position to, for example, lease out the apartment, the references to harassment and the ongoing privilege of housing indicate that it may well apply to third-party conduct. *See Vermont Human Rights Commission v. Polak*, No. 21-CV-2095, 2022 WL 1242683 (Vt. Super. Ct. Feb. 2, 2022) (explaining that 9 V.S.A. § 4503(a)(2) at least arguably could extend to circumstances in which a neighbor's conduct has a discriminatory effect on one's housing). But other interpretations are also possible.

The Court need not rule at this time that the allegations asserted against Landon and Denise satisfy § 4503(a)(2) despite not being owners or involved in leasing decisions. As above, it is enough to observe that this provision might be determined to apply in these circumstances. *See Ass'n of Haystack Prop. Owners, Inc. v. Sprague,* 145 Vt. 443, 447 (1985) ("Moreover, courts should be especially reluctant to dismiss on the basis of pleadings when the asserted theory of liability is novel or extreme."). Further, consideration of the need for interpretation of and how to interpret this provision are better made on a more complete factual record. The motions to dismiss are denied as to

Count 7 (the state claim) and, because the parties do not distinguish between the state and federal claims for dismissal purposes, Count 8 (the federal claim) as well.

E.     Counts 9–12

Counts 9–12 are expressly *not* asserted against Landon and Denise.  They nevertheless argue that these claims should be dismissed *as to them* precisely because they are not asserted against them.  In response, Plaintiffs confirm that these claims are not asserted against Landon and Denise and assent to dismissal as against them but only on condition that dismissal is without prejudice.

Landon's and Denise's requests and Plaintiffs' response are nullities.  If a claim is not asserted against a party, there is nothing to dismiss as to that party; nor is there anything to preserve by dismissing without prejudice.  The Court does not rule when there is no controversy.  *See Sweezey v. Neel*, 2006 VT 38, ¶ 28, 179 Vt. 507, 519.

F.     Count 13

Landon and Denise argue that Count 13, intentional infliction of emotional distress (IIED), should be dismissed because nothing alleged in the complaint is sufficiently extreme and outrageous to support such a claim.  In response, Plaintiffs rely heavily on Vermont's tolerant dismissal standard and argue that the claim should survive.

A successful IIED claim requires: (1) conduct that is extreme and outrageous; (2) conduct that is intentional or reckless; and (3) conduct that causes severe emotional distress."  *Baptie v. Bruno*, 2013 VT 117, ¶ 24, 195 Vt. 308, 318.  To satisfy the outrageousness element, the defendant's behavior must "surpass the bounds of decency that can be tolerated in a civilized society."  *Fromson v. State*, 2004 VT 29, ¶ 15, 176 Vt.

395; *see also Restatement (Second) of Torts* § 46, cmt. d (1965). The test is objective. Conduct amounting only to "insult, indignities, and annoyances" do not rise to the level of extreme and outrageous conduct. *Denton v. Chittenden Bank*, 163 Vt. 62, 66–67 (1994).

As to this claim, Landon's and Denise's motions strike too soon. The thrust of the complaint is that they engaged in a campaign of harassment, in concert with Landon's parents, against Plaintiffs on the basis of race, which lasted years and followed them when they relocated. The conduct included having pets urinate and defecate on Plaintiffs' porch, made car burnouts in front of their home to intimidate Plaintiffs, made obscene gestures towards Plaintiffs, and swerved moving cars towards them. Although the complaint leaves any other details unstated, Plaintiffs should have the opportunity to develop these claims so they may be addressed on the merits. "The purpose of a dismissal motion 'is to test the law of the claim, not the facts which support it.'" *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514, 519 (The "'threshold a plaintiff must cross in order to meet our notice-pleading standard' is . . . a low one.") (citations omitted). Given the tenor and descriptions of the events alleged thus far, the Court cannot conclude that "it is beyond doubt that there exist no facts or circumstances that would entitle [Plaintiffs] to relief." *Id.* (citation omitted). The allegations go well beyond mere "indignities." *Denton*, 163 Vt. at 66–67.

Landon's and Denise's motions are denied as to Count 13.

<u>Conclusion</u>

For the foregoing reasons, Landon's and Denise's motions to dismiss are (a) denied as to Counts 1, 2, 5–8, 13 (b) granted as to Counts 3 and 4, and (c) moot as to Counts 9–12.

Electronically signed on Wednesday, March 6, 2024, per V.R.E.F. 9(d).


_____
Timothy B. Tomasi
Superior Court Judge